IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2026 Term

No. 25-371

FILED

**April 7, 2026**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA EX REL. STATE OF WEST VIRGINIA,
Petitioner,

v.

THE HONORABLE JAMES YOUNG, JUDGE OF THE CIRCUIT COURT OF
WAYNE COUNTY, SITTING BY SPECIAL ASSIGNMENT IN CABELL COUNTY;
JAN HITE KING; AND KIMBERLY MAYNARD,
Respondents.

PETITION FOR A WRIT OF PROHIBITION

WRIT GRANTED

Submitted: January 13, 2026
Filed: April 7, 2026

John B. McCuskey, Esq.
Attorney General
Andrea R. Nease, Esq.
Deputy Attorney General
Michele Duncan Bishop, Esq.
Senior Assistant Attorney General
Office of the Attorney General
Charleston, West Virginia
Counsel for Petitioner

John B. McCuskey, Esq.
Attorney General
Michael R. Williams, Esq.
Solicitor General
Mattie F. Shuler, Esq.

Tyler C. Haslam, Esq.
Haslam Law Firm LLC
Huntington, West Virginia
Counsel for Respondent Jan Hite King

Assistant Solicitor General
Charleston, West Virginia
Counsel for Amicus Curiae
West Virginia Secretary of State Kris
Warner

CHIEF JUSTICE BUNN delivered the Opinion of the Court.

JUSTICE TRUMP dissents and reserves the right to file a separate opinion.

**SYLLABUS BY THE COURT**

1.     "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

2.     "The State may seek a writ of prohibition in this Court in a criminal case where the trial court has exceeded or acted outside of its jurisdiction. Where the State claims that the trial court abused its legitimate powers, the State must demonstrate that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction. In any event, the prohibition proceeding must offend neither

i

the Double Jeopardy Clause nor the defendant's right to a speedy trial. Furthermore, the application for a writ of prohibition must be promptly presented." Syllabus Point 5, *State v. Lewis*, 188 W. Va. 85, 422 S.E.2d 807 (1992), *superseded on other grounds by statute as recognized in State v. Butler*, 239 W. Va. 168, 179 n.27, 799 S.E.2d 718, 729 n.27 (2017).

3.      "The repeal of a statute by implication is not favored, and where two statutes are in apparent conflict, the Court must, if reasonably possible, construe such statutes so as to give effect to each." Syllabus Point 4, *State ex rel. Graney v. Sims*, 144 W. Va. 72, 105 S.E.2d 886 (1958).

4.      """"A general statute, which does not use express terms or employ words which manifest a plain intention so to do, will not repeal a former statute dealing with a particular subject, and the two statutes will operate together unless the conflict between them is so real and irreconcilable as to indicate a clear legislative purpose to repeal the former statute." Point 6, syllabus, *Harbert v. The County Court of Harrison County*, 129 W. Va. 54 [39 S.E.2d 177 (1946)].' Syllabus Point 1, *Brown v. Civil Service Comm'n*, 155 W. Va. 657, 186 S.E.2d 840 (1972)." Syllabus Point 2, *Trumka v. Clerk of the Circ. Ct. of Mingo Cnty.*, 175 W. Va. 371, 332 S.E.2d 826 (1985).

5.      "To warrant the adjudication of the repeal of a statute by implication there must exist such a positive repugnancy between the statute claimed to be repealed and

the subsequent enactment that they cannot, by any reasonable hypothesis, be consistently reconciled." Syllabus Point 2, *State ex rel. Thompson v. Morton*, 140 W. Va. 207, 84 S.E.2d 791 (1954).

**BUNN, Chief Justice:**


The State seeks a writ of prohibition based on the circuit court's dismissal of an indictment against Respondents[1] for election-related offenses.[2] Specifically, the circuit court concluded that the more recently amended one-year statute of limitations generally applicable to misdemeanors under West Virginia Code § 61-11-9 applied to render the indictment untimely rather than West Virginia Code § 3-9-24, which specifically allows five years for prosecution of violations of the Election Code.[3] We conclude that the language of West Virginia Code § 3-9-24 indicates it applies to misdemeanor violations of the Election Code and, as the more specific statute, should have been applied to the election offenses rather than the general misdemeanor statute of limitations found in West Virginia Code § 61-11-9. Because our precedent instructs that specific statutes prevail over general ones, the circuit court clearly erred in resorting to tenets of statutory construction only employed in the face of two statutes in irreconcilable conflict. We, therefore, grant the

---

[1] Respondent Kimberly Maynard did not file a brief or otherwise participate in the proceedings before this Court.

[2] We acknowledge the contribution of amicus curiae, the West Virginia Secretary of State, who filed a brief in this case. We value amicus participation and consider its brief in conjunction with the parties' arguments.

[3] The Election Code is found in Chapter 3 of the West Virginia Code. West Virginia Code § 3-1-1 provides "[t]his chapter shall constitute and may be cited as the 'West Virginia Election Code' and contemplates and comprehends a code of laws for the establishment, administration and regulation of elections and election procedures in the State of West Virginia."

1

requested writ of prohibition.

## I.

## FACTUAL AND PROCEDURAL HISTORY

Respondents Jan Hite King and Kimberly Maynard ran for seats on the Cabell County Commission in 2022 and certified in their candidate filings on February 3, 2022, that they were residents of Cabell County's Magisterial District 1. Upon investigation, the Secretary of State's Office concluded that Ms. King resided in Magisterial District 2 and Ms. Maynard resided in Magisterial District 3; the Deputy Secretary of State and General Counsel referred the election violations for prosecution.[4] On April 7, 2025, a Cabell County grand jury indicted Ms. King and Ms. Maynard for one count each of false swearing in violation of West Virginia Code § 3-9-3(b) (Counts 1 and 2); one count each of aiding and abetting the other to commit false swearing in violation of West Virginia Code § 3-9-3(b) (Counts 3 and 4); and one count of conspiracy in violation of West Virginia Code § 61-10-31 (Count 5).[5] Each count of the indictment alleges

---

[4] West Virginia Code § 3-1A-6(c) tasks the Secretary of State with "investigat[ing] the administration of election laws, frauds and irregularities in any registration or election" and "report[ing] violations of election laws to the appropriate prosecuting officials[.]" Because our analysis is limited to legal issues of statutory construction, the details of the underlying investigation and delay in prosecution are unnecessary to our review except insofar as the prosecution was commenced more than one year, but less than five years, from February 3, 2022.

[5] Respondent King's brief argued that the State lacked standing to pursue a writ of prohibition before this Court for lack of prosecutorial authority below. This Court directed the State to address standing in a reply brief. The reply brief and supplemental appendix demonstrated that the West Virginia Prosecuting Attorney Institute had erroneously

misdemeanor offenses.

Respondents filed motions to dismiss the indictments, arguing that under West Virginia Code § 61-11-9, misdemeanors must be prosecuted within one year of the offense and that the April 7, 2025 indictment was returned more than one year after February 3, 2022. The State conceded that Count 5, the Chapter 61 conspiracy charge, was subject to the one-year limitation in West Virginia Code § 61-11-19 and therefore untimely, but that the remaining offenses were timely because they are governed by the five-year limitation outlined for election-specific offenses in West Virginia Code § 3-9-24. The circuit court dismissed the indictment, concluding that West Virginia Code § 3-9-24 was vague as to its application to misdemeanors and that because the two limitations periods could not be reconciled, West Virginia Code § 61-11-9 controlled because it was amended more recently than West Virginia Code § 3-9-24. This petition for a writ of prohibition followed.

## II.

### STANDARD OF REVIEW

The State seeks a writ of prohibition under this Court's original jurisdiction, contending that the lower court exceeded its legitimate authority, issuance of which abides

informed Respondent that Seth Gaskins had not been properly appointed as special prosecutor; as a result, Respondent withdrew the standing challenge at oral argument. Given that standing is apparent from the record and now undisputed, we find it unnecessary to further address the issue.

the well-established *Hoover* factors:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996). However,

because the State seeks a writ of prohibition in a criminal case, we limit its issuance to

particularized circumstances:

> The State may seek a writ of prohibition in this Court in a criminal case where the trial court has exceeded or acted outside of its jurisdiction. Where the State claims that the trial court abused its legitimate powers, the State must demonstrate that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction. In any event, the prohibition proceeding must offend neither the Double Jeopardy Clause nor the defendant's right to a speedy trial. Furthermore, the application for a writ of prohibition must be promptly presented.

Syl. Pt. 5, *State v. Lewis*, 188 W. Va. 85, 422 S.E.2d 807 (1992), *superseded on other*

*grounds by statute as recognized in State v. Butler*, 239 W. Va. 168, 179 n.27, 799 S.E.2d

4

718, 729 n.27 (2017). With these standards in mind, we turn to the parties' arguments.

## III.

## DISCUSSION

Here we answer the narrow question of whether misdemeanor election offenses arising under the West Virginia Election Code are governed by the five-year limitations period stated in that chapter at West Virginia Code § 3-9-24 or the one-year limitations period for misdemeanor offenses outlined in West Virginia Code § 61-11-9. The language of West Virginia Code § 3-9-24 specifically states that it governs the time frame for prosecutions of violations of the Election Code, and, as the more specific statute, should have been applied to the underlying charges that Respondents violated provisions of the Election Code.

West Virginia Code § 3-9-24 provides, "[n]o person shall be prosecuted for any crime or offense under any provision of this chapter, unless upon an indictment found and presentment made within five years after the date of the commission of the crime or offense." Conversely, West Virginia Code § 61-11-9 provides, in relevant part, that "[a] prosecution for a misdemeanor shall be commenced within one year after the offense was committed[.]" Which of these statutes applies is dispositive because the indictment against Respondents was returned more than one year but less than five years from the date of the offenses.

In reading West Virginia Code § 3-9-24, the circuit court reasoned that it was

worded in the negative to limit the timeframe for felony prosecutions to those pursued within five years rather than to extend the timeframe for misdemeanor prosecutions to five years from the one-year limitation found in West Virginia Code § 61-11-19. Concluding that the five-year Election Code statute of limitations was vague as applied to misdemeanors, the circuit court found it must be read in conjunction with § 61-11-9, with which it irreconcilably conflicts. Applying tenets of statutory construction, the court then concluded that because West Virginia Code § 61-11-9 was amended in 2002 and West Virginia Code § 3-9-24 was amended in 1978, the one-year limitation contained in the former should prevail as the most recent reflection of legislative will. *See* Syl. Pt. 2, *Stamper by Stamper v. Kanawha Cnty. Bd. of Educ.*, 191 W. Va. 297, 445 S.E.2d 238 (1994) ("As a general rule of statutory construction, if several statutory provisions cannot be harmonized, controlling effect must be given to the last enactment of the Legislature.") (citation omitted); *accord Wiley v. Toppings*, 210 W. Va. 173, 556 S.E.2d 818 (2001) ("When faced with two conflicting enactments, this Court and courts generally follow the black-letter principle that 'effect should always be given to the latest . . . expression of the legislative will . . . .'") (quoting *Joseph Speidel Grocery Co. v. Warder*, 56 W. Va. 602, 608, 49 S.E. 534, 536 (1904) (footnote omitted).

However, the circuit court jumped to conclusions, resigning itself to repeal of West Virginia Code § 3-9-24 by implication without first attempting to harmonize the two statutes as required by the precedent on which it relied. Both *Stamper* and *Wiley*, *supra*, turn to the last-in-time rule only in the face of conflicting enactments that cannot be

6

harmonized. But the circuit court's perceived conflict was of its own making. West Virginia Code § 61-11-9 is misemployed when introduced to an analysis of election-specific offenses where the language of West Virginia Code § 3-9-24 patently demonstrates its command over violations of the Election Code.[6]

The language of West Virginia Code § 3-9-24 makes no attempt to distinguish felonies from misdemeanors and invites no confusion as to its application to election-specific misdemeanor offenses, providing a five-year statute of limitations for "*any* crime or offense under *any* provision of this chapter." (Emphasis added). Consistent with that language, the Legislature created various election-specific offenses in Chapter 3 that carry penalties in the form of both felonies and misdemeanors. *See* W. Va. Code §§ 3-1-34; 3-1-36; 3-2-10; 3-2-32 to -36; 3-3-4; 3-4A-7; 3-4A-19; 3-4A-23; 3-4A-33 to -34; 3-5-23; 3-8-5d; 3-8-2; 3-8-7 to -8; 3-8-11 to -12; 3-9-1 to -23; 3-12-15. There is nothing vague about whether it applies to misdemeanors *and* felonies for violations of Chapter 3, specifically,

---

[6] We distinguish the statutory choice-of-application analysis here with that for harmonization of statutes read in pari materia, that is, because they relate to the same subject-matter. As this Court explained in *Manchin v. Dunfee*, 174 W. Va. 532, 536, 327 S.E.2d 710, 714 (1984), it is an oversimplification of the rule to conclude that because statutes relate to the same subject, they must always be read in pari materia. The obligation to read statutes together under that tenet of statutory construction is premised on a conclusion that the statute at issue is ambiguous and its clarity ascertained by analyzing another statute with which it was intended to operate. Syl. Pt. 1, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951) ("The rule that statutes which relate to the same subject should be read and construed together is a rule of statutory construction and does not apply to a statutory provision which is clear and unambiguous."). In any case, "a related statute cannot be utilized to create doubt in an otherwise clear statute." *Manchin*, 174 W. Va. at 536, 327 S.E.2d at 714.

7

when the Legislature chose the words "any crime or offense" and "any provision of this chapter." *See* Syl. Pt. 2, *Thomas v. Firestone Tire & Rubber Co.,* 164 W. Va. 763, 266 S.E.2d 905 (1980) ("The word 'any,' when used in a statute, should be construed to mean any.").

It is undisputed that Respondents were indicted for Chapter 3 misdemeanor offenses, and the State conceded that the single count *not* brought under Chapter 3—Count Five, for violation of West Virginia Code § 61-10-31—was appropriately dismissed as untimely because it was subject to the one-year limitation contained in Chapter 61, speaking to crimes generally. Allowing that both statutes would purport to apply to misdemeanors,[7] it does not follow that they are in irreconcilable conflict,[8] and courts are obligated to give effect to both, if possible. "'[C]ourts are not at liberty to pick and choose

[7] Respondent King makes a slightly different argument on appeal than that advanced in the circuit court, that is, that West Virginia Code § 61-11-9 is actually the more specific provision because West Virginia Code § 3-9-24 applies to both felonies and misdemeanors and West Virginia Code § 61-11-9 only applies to misdemeanors. In addition to being inconsistent with its argument that § 3-9-24 was intended only to apply to felonies based on its verbiage, that argument also ignores that the Election Code further specifies the type of misdemeanors to which it applies and so is still the more specific of the two. We further find Respondent's reliance on *State v. Leonard* is misplaced. 209 W. Va. 98, 543 S.E.2d 655 (2000). While *Leonard* states that West Virginia Code § 61-11-19 is "a specific statute of limitation for misdemeanors," the Court's use of the word "specific" was not in the context of a statutory construction analysis of general and specific statutes, nor intended to imply that it would necessarily override other statutes not then before the Court. *See id.* at 101, 543 S.E.2d at 658.

[8] In *State v. Schober*, this Court recently explained that "[s]tatutes generally conflict when they "'are explicitly contrary to, or inconsistent with, each other.'" *Off. of Hawaiian Affs. v. Kondo*, 528 P.3d 243, 251 (Haw. 2023) (quoting *Boyd v. Haw. State Ethics Comm'n*, 378 P.3d 934, 943 (Haw. 2016))." 251 W. Va. 34, 41, 909 S.E.2d 69, 76 (2024).

among . . . [legislative] enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed . . . [legislative] intention to the contrary, to regard each as effective.'" *State v. Harris*, 195 W. Va. 43, 48 n.6, 464 S.E.2d 363, 368 n.6 (1995).

"When faced with a choice between two statutes, one of which is couched in general terms and the other of which specifically speaks to the matter at hand, preference generally is accorded to the specific statute." *Newark Ins. Co. v. Brown*, 218 W. Va. 346, 351, 624 S.E.2d 783, 788 (2005). "Typically, when two statutes govern a particular scenario, one being specific and one being general, the specific provision prevails." *Bowers v. Wurzburg*, 205 W. Va. 450, 462, 519 S.E.2d 148, 160 (1999). *See also Harris*, 195 W. Va. at 47, 464 S.E.2d at 367 ("We agree with the defendant that W. Va. Code, 49-5-16(b), being a specific enactment dealing with the issue at hand, should control over the more general provision of the murder sentencing statute, W. Va. Code, 61-2-2."). There is no basis to employ the general time limitations in Chapter 61 for a Chapter 3 offense where Chapter 3 contains its own, specific statute of limitations.[9]

---

[9] Respondent's argument is also based in large part on the Secretary of State's policies that they contend demonstrate that the Secretary of State views West Virginia Code § 61-11-9 as the controlling provision for misdemeanors, even for violations of the Election Code. The Secretary of State's amicus brief indicates that the policy manual was amended and that, in practice, it pursues prosecution of misdemeanor Election Code violations beyond the one-year limitation of West Virginia Code § 61-11-9. Because we find that the language of West Virginia Code § 3-9-24 provides a straightforward answer to which

Applying West Virginia Code § 3-9-24 to election-offense misdemeanors and § 61-11-9 to misdemeanors in general, is not only consistent with the statutory language and applicable tenets of statutory construction, but is buttressed by this Court's acknowledgement that "our state election code presents a comprehensive 'code of laws for the establishment, administration and regulation of elections and election procedures in the state of West Virginia.'" *Wells v. State ex. rel Miller*, 237 W. Va. 731, 738, 791 S.E.2d 361, 368 (2016) (quoting W. Va. Code § 3-1-1).

The circuit court thus clearly erred in resorting to ill-fitting tenets of statutory construction based on the date of last amendment[10] that, in practicality, repealed West

statute prevails, we need not address either argument relative to policies and practices of the Secretary of State.

[10] Though not pertinent to our analysis insofar as we find error in application of the last-enacted tenet of statutory construction, we note for the sake of clarity that amendments are distinguishable from enactments. The circuit court took the date of amendment as dispositive without looking to *what* had been amended. The Election Code and West Virginia Code § 61-11-9 co-existed with a one-year statute of limitations until 1978 when the Election Code was *amended* from a one-year limitations period to the now-existing five-year limitation period. In 2002, West Virginia Code § 61-11-9 was *amended* to change the statute of limitations for petit larceny from three years to one year.

Prior to 2002, West Virginia Code § 61-11-9 provided that misdemeanors were generally subject to a one-year statute of limitations save for those for perjury and petit larceny, both of which permitted three years for prosecution. *See* W. Va. Code § 61-11-9 (1923). The 2002 amendments reflect that the Legislature struck the exception for petit larceny, which Respondent takes to mean that the Legislature sought a flat one-year statute of limitations for all misdemeanors as a matter of policy, but there is nothing in the bill's history that bears out that legislative purpose. Instead, it reflects that petit larceny was changed to a one-year statute of limitations because the provision related to form language for an indictment for petit larceny, West Virginia Code § 62-9-10, already provided for one

10

Virginia Code § 3-9-24 by implication, at least with respect to misdemeanor violations of the Election Code. "The repeal of a statute by implication is not favored, and where two statutes are in apparent conflict, the Court must, if reasonably possible, construe such statutes so as to give effect to each." Syl. Pt. 4, *State ex rel. Graney v. Sims*, 144 W. Va. 72, 105 S.E.2d 886 (1958). *Accord*, Syl. Pt. 1, *State ex rel. City of Wheeling v. Renick*, 145 W. Va. 640, 116 S.E.2d 763 (1960) ("Repeal of a statute by implication is not favored in law."). As discussed above, the statutes are not in conflict; one speaks to general crimes and the other to specific violations of the Election Code. In reading a conflict into those statutes, the circuit court took the Legislature's action in 2002 to amend West Virginia Code § 61-11-9 to mean that, from that point forward, § 61-11-9's general one-year limitation applied to every misdemeanor in the Code, and that the Legislature simultaneously neglected to repeal West Virginia Code § 3-9-24's specific five-year limitation for violations of the Election Code.

It is widely accepted that specific statutes prevail over general ones irrespective of the order of enactment unless it is readily apparent that the Legislature intended to repeal the specific statute by passing the general one:

> [w]here one statute deals with a subject in general terms, and another deals with a part of the same subject in a more detailed way, the two should be harmonized if possible; but if there is any conflict, the latter will prevail, regardless of whether it was

---

year and the Legislature clocked the inconsistent provisions. *See* H.B. 4044, 75th Leg. Reg. Sess. (W. Va. 2002).

11

passed prior to the general statute, unless it appears that the legislature intended to make the general act controlling.

2B Norman J. Singer, *Sutherland Statutory Construction* § 51.05, at 244 (6th ed. 2000) (footnotes omitted). Our jurisprudence mirrors this view. The Court held at Syllabus Point 2 of *Trumka v. Clerk of the Circuit Court of Mingo County* that

> " 'A general statute, which does not use express terms or employ words which manifest a plain intention so to do, will not repeal a former statute dealing with a particular subject, and the two statutes will operate together unless the conflict between them is so real and irreconcilable as to indicate a clear legislative purpose to repeal the former statute.' Point 6, syllabus, *Harbert v. The County Court of Harrison County*, 129 W. Va. 54 [39 S.E.2d 177 (1946)]." Syllabus Point 1, *Brown v. Civil Service Comm'n*, 155 W. Va. 657, 186 S.E.2d 840 (1972).

175 W. Va. 371, 332 S.E.2d 826 (1985). Moreover, "To warrant the adjudication of the repeal of a statute by implication there must exist such a positive repugnancy between the statute claimed to be repealed and the subsequent enactment that they cannot, by any reasonable hypothesis, be consistently reconciled." Syl. Pt. 2, *State ex rel. Thompson v. Morton*, 140 W. Va. 207, 84 S.E.2d 791 (1954).

Respondents thus ask this Court not only to set aside its precedent that specific statutes prevail over general ones, but to additionally find that the statutes are in true and irreconcilable conflict, that they are so positively repugnant to one another that we must presume a mistake on the part of the Legislature, and that repeal by implication is the only remaining option at the Court's disposal. There is simply no occasion here to prompt such drastic measures.

Accordingly, we find clear error in the circuit court's application of the general, one-year statute of limitations found in West Virginia Code § 61-11-9, to dismiss election offenses that are subject to a five-year statute of limitations under West Virginia Code § 3-9-24. The State has no adequate, alternative means to correct the error and was deprived of its right to prosecute. Concluding that the standards set forth in *Lewis* are satisfied and the factors in *Hoover* weigh in favor of extraordinary relief, we grant the petition for a writ of prohibition.

## IV.

## CONCLUSION

For the foregoing reasons, we grant the writ of prohibition to prevent enforcement of the May 1, 2025 order of the circuit court dismissing the indictment charging Respondents with violations of the Election Code.

Writ granted.